IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMERICAN FARM BUREAU FEDERATION**, *et al.,* | : | **CIVIL NO. 1:11-CV-0067** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**, *et al.,* | : | **Judge Sylvia H. Rambo** |
| **Defendants** | : | |

### M E M O R A N D U M

Presently before the court is Plaintiffs' motion to complete the administrative record.  (Doc. 82.)  Plaintiffs are seeking to supplement the administrative record with certain documents that they believe are relevant to the underlying challenged action relating to the issuance of the Chesapeake Bay Total Maximum Daily Load for Nitrogen, Phosphorus and Sediment ("TMDL").  Those documents include email correspondence as well as an Agricultural Nutrient Policy Council report ("ANPC Report").  Plaintiffs are also requesting leave to conduct discovery to identify any additional documents that should be added to the administrative record.  The motion has been fully briefed and is ripe for disposition. For the reasons set forth below, the motion will be granted in part and denied in part.

I.        **Background**

Plaintiffs filed their initial complaint on January 10, 2011, (Doc. 1), followed by an amended complaint (Doc. 16) challenging the United States

Environmental Protection Agency's ("EPA's") Chesapeake Bay TMDL.  Plaintiffs are seeking declaratory and injunctive relief against EPA, requesting that the court vacate the TMDL.  Plaintiffs allege that EPA lacked authority under the Clean Water Act to issue the TMDL; the TMDL was arbitrary and capricious; EPA failed to provide adequate public notice and comment on the TMDL in violation of the Administrative Procedures Act ("APA"); and the TMDL is *ultra vires*.[1]

On September 1, 2011, EPA filed a notice of lodging the administrative record and a certified index to the record.  (Doc. 77.)  Copies of the administrative record were sent to the court and the parties.

On October 13, 2011, the court granted three motions for leave to intervene as party defendants filed by various public interest and municipal groups. (Doc. 87.)

On October 11, 2011, Plaintiffs filed the present motion to complete the administrative record and brief in support.  (Docs. 82 & 85.)  Briefs in opposition were filed by Defendant EPA (Doc. 88) and Defendant-Intervenors (Doc. 89) on October 28, 2011.  A reply brief was filed on November 14, 2011.  (Doc. 91.)  Thus, the motion is ripe for disposition.

II.         **Discussion**

Plaintiffs argue for the inclusion of certain EPA email correspondence and an ANPC Report in the administrative record.  Plaintiffs argue that these documents were before EPA at the time it was drafting the Bay TMDL and they were

---

[1]   For further discussion of the factual and legal background, parties may refer to this court's memorandum and order dated October 13, 2011.  *Am. Farm Bur. Fed. v. EPA*, 2011 U.S. Dist. LEXIS 118233 (M.D. Pa. Oct. 13, 2011) (granting motions for intervention).

also considered by EPA during the drafting process, thus making them appropriate for inclusion in the administrative record.  In response, EPA and Defendant-Intervenors argue primarily that these documents were not relevant to the final TMDL and, thus, were properly excluded from the administrative record.  The court will examine each document and the parties' respective arguments in more detail below, but first a threshold determination must be made regarding the propriety of supplementing, or completing, the administrative record.

A challenge to an administrative action under the APA raises a unique set of issues.  First, when reviewing the propriety of an agency action, the court is required to apply the familiar "arbitrary and capricious" standard from the APA.  Section 706 of the APA provides that:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall –
>
> ***
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be–
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706.  This standard requires the court to walk a fine line of conducting a "searching and careful" inquiry into the administrative record to determine whether the agency's decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment" while, at the same time, refraining from substituting its own judgment for that of the agency.  *Citizens Advisory Comm. on Private Prisons v. Fed. Bur. of Prisons*, 197 F. Supp. 2d 226, 240 (W.D. Pa. 2001) (quoting *Citizens to Protect Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415-17

(1971) and *Soc'y Hill Towers Owners' Assoc. v. Rendell*, 201 F.3d 168, 178 (3d Cir. 2000)).

To conduct an effective judicial review of an agency action, a court must have at its disposal "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  The Supreme Court, in its seminal *Overton Park* decision, clarified that judicial review "is to be based on the full administrative record that was before the [agency] at the time it made its decision."  401 U.S. at 420.  Therefore, it follows that a reviewing court cannot consider matters not before the agency.  Nor can the court engage in a *de novo* review, absent extraordinary circumstances not applicable here.[2]  It has been repeatedly stated that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."  *United States v. Keystone Sanitation Co.*, 1996 U.S. Dist. LEXIS 22808, *10 (M.D. Pa. Aug. 27, 1996) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).  The "whole record" consists of materials either directly or indirectly considered by the decision maker.  *Keystone Sanitation*, 1996 U.S. Dist. LEXIS 22808, *23 n.6 (citing *Wade v. Dole*, 631 F. Supp. 1100, 1107 (N.D. Ill. 1986), *aff'd* 813 F.2d 798 (7th Cir. 1987)); *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735,

---

[2]   In general, a reviewing court is "not empowered to conduct a de novo inquiry into the matter being reviewed and reach its conclusions based on such an inquiry." *Am. Bankers Assoc. v. Nat. Credit Union Admin.*, 513 F. Supp. 2d 190, 197 (M.D. Pa. 2007) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).  The Supreme Court recognized two exceptions to this rule: "*de novo* review is appropriate only where there are inadequate factfinding procedures in an adjudicatory proceeding, or where judicial proceedings are brought to enforce certain administrative actions." *Camp v. Pitts*, 411 U.S. 138, 141-42 (1973) (per curiam).  More recently, the Third Circuit acknowledged the continued viability of these exceptions.  *NVE, Inc. v. HHS*, 436 F.3d 182, 189 (3d Cir. 2006).  However, neither exception is applicable here, nor do the parties advocate for the court's *de novo* review in this instance.

739 (10th Cir. 1993); *Ohio Valley Envt'l Coalition v. Whitman*, 2003 U.S. Dist. LEXIS 148, *8 (S.D. W.Va. Jan. 6, 2003).

Because the court is reviewing an agency's decision, the agency is rightly tasked with the burden of preparing the record consisting of those documents that it "directly or indirectly considered" in making that decision.  If an agency certifies that the administrative record is full and complete, the court "assumes that the agency properly designated the Administrative Record absent clear evidence to the contrary." *Citizens Advisory Comm.,* 197 F. Supp. 2d at 240 (quoting *Bar MK Ranches*, 994 F.2d at 740).  Here, EPA filed an administrative record that includes documents it considered in making its decisions related to pollution limits set forth in the Bay TMDL.  (Doc. 77.)  EPA subsequently agreed to supplement the record with additional documents, at Plaintiffs' request, that it admits were erroneously or inadvertently omitted from the record.  EPA has otherwise certified that the record in this case is true and correct.  Thus, the court will assume, absence a clear showing to the contrary, that the record is complete.

However, notwithstanding this presumption in favor of EPA, EPA does not have complete control over the contents of the administrative record.  Indeed, "the whole administrative record . . . is not necessarily those documents that the agency has compiled or submitted as 'the' administrative record." *Ohio Valley*, 2003 U.S. Dist. LEXIS 148, *8 (quoting *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)).  Restricting judicial review to whatever documents an agency submits "would permit an agency to omit items that undermin[e] its position." *Id.* (citing *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)).  Accordingly, the courts must engage in an appropriate review to ensure that

the full and complete administrative record has been submitted.  *See Int'l Longshoreman's Assoc. v. Nat'l Mediation Bd.*, 2006 U.S. Dist. LEXIS 4080, *7 (D.C. Cir. Jan. 25, 2006) ("It is improper for a district court to review only a 'partial and truncated [administrative] record.'" (quoting *Natural Res. Def. Council, Inc. v. Train*, 519 F.3d 287, 291 (D.C. Cir. 1975))).

Because judicial review is limited to the administrative record, there are only few instances where a court is justified to look beyond the administrative record.  As this court noted in *United States v. Keystone Sanitation Co., Inc.*, such justifications may occur where:

> (1) judicial review is impeded because the record fails to explain the agency's action, [citing *Camp*, 441 U.S. at 142-43]; (2) the record is incomplete, [citing *Texas v. Steel Co.*, 93 F.R.D. 619, 621 (N.D. Tex. 1982)]; (3) the agency failed to consider all relevant factors, [citing *Florida Power & Light Co.*, 470 U.S. at 744]; or (4) there is a strong showing that the agency engaged in improper behavior or acted in bad faith, [citing *Volpe*, 401 U.S. 420].

1995 U.S. Dist. LEXIS 22371, *11 (M.D. Pa. July 31, 1995).  Plaintiffs here are arguing that the record is incomplete.

EPA argues that adding the suggested documents to the administrative record would be improper because Plaintiffs failed to show bad faith on behalf of EPA.  (Doc. 88 at 13-21 of 29.)  However, several courts have recognized a distinction between a motion to *complete* the administrative record and a motion to *supplement* the administrative record.  *See Ohio Valley*, 2003 U.S. Dist. LEXIS 148, *10 (noting that "plaintiffs do not seek to supplement the administrative record in the sense of adding documents to the record that were neither before the agency nor considered in the decision-making process . . . .  Instead, the plaintiffs contend that the EPA has not submitted to the court all of the materials that properly constitute the

complete administrative record"); *Miami Nation of Indians v. Babbitt*, 979 F. Supp. 771, 777, 781 (N.D. Ind. 1996) (directing the government to complete the record with various materials and explaining that the plaintiff "correctly respond[ed]" to the government's objection by clarifying "that they do not seek supplementation of the administrative record, but rather they seek to complete the current record to include materials that should have been there from the start.")

Generally, *supplementation* of the administrative record implies either: 1) the addition of newly created evidence, such as through the collection of direct testimony from agency decision makers, typically requested by the court to explain part of the record or 2) the addition of documents or other information that were not before the agency when the decision was made, such as post-decision comments or studies. *See* James N. Saul, *Overly Restrictive Administrative Records and the Frustration of Judicial Review*, 38 ENVTL. L. 1301, 1320 (2008). By contrast, *completion* of the record implies the addition of only those relevant documents that were actually available to, and considered by the agency at the time the decision was made and, therefore, should have been part of the record but were improperly excluded. *Id.* This distinction is critical because it is well-established that, where a plaintiff contends that an agency has not submitted to the court all the materials that properly constitute the administrative record, no showing of bad faith or improper purpose is necessary. *Overton Park*, 401 U.S. at 420 (clarifying that a showing of bad faith is only required where the method of supplementation involves testimony inquiring into the mental processes of the administrative decision makers); *Ohio Valley*, 2003 U.S. Dist. LEXIS 148, *10-11 (where "Plaintiffs contend that EPA has not submitted to the court all the materials that properly constitute the complete

administrative record . . . no showing of bad faith for improper purpose is necessary); *Ad Hoc Metals Coalition v. EPA*, 227 F. Supp. 2d 134, 140 n.5 (D.C. Cir. 2002) (same).  Here, Plaintiffs are not requesting that testimonial evidence explaining the actions of the decision makers be added to the record; rather, they are requesting the record be completed with documents they argue should have been a part of the administrative record from the start.  Thus, EPA's argument that Plaintiffs' motion should be denied because Plaintiffs failed to make a showing of bad faith is discredited.

Accordingly, Plaintiffs should be permitted to complete the administrative record, provided they can make a clear showing that the documents at issue were before the agency and were considered, directly or indirectly, by EPA during the TMDL drafting process.  The court will examine each document in turn.

A.   **ANPC Report**

In October 2010, the U.S. Department of Agriculture Natural Resource Conservation Service ("NRCS") released a draft report analyzing the percentage of various land uses in the Chesapeake Bay Watershed.  *Assessment of the Effects of Conservation Practices on Cultivated Cropland in the Chesapeake Bay Region – Review Draft,* (Oct. 2010) ("NRCS Report").  This report has been submitted as part of the administrative record.  (AR0032818 to AR0032978).  The land use estimates in the NRCS Report differed from the estimates EPA used to develop the final TMDL.  NRCS provided EPA with a chart of those differences on September 14, 2011, which has also been submitted with the record.  (AR0029774-75).

On December 8, 2010, the Agricultural Nutrient Policy Council released a report analyzing the differences between the assumptions underlying the EPA's

TMDL models and the NRCS Report.  *See* LimnoTech, *Comparison of Draft Load Estimates for Cultivated Cropland in the Chesapeake Bay Watershed,* (Dec. 8, 2010) ("ANPC Report").  (Doc. 85-7.)  The Report questioned the validity of the EPA models and suggested that the TMDL be reassessed in light of the NRCS Report.  (Doc. 85-7 at 10.)  EPA ultimately did not reassess or modify its models in response to the ANPC Report and did not include the ANPC Report in the administrative record.

Plaintiffs argue that the ANPC Report should be a part of the administrative record.  In support, they point out that the Report was "before" the EPA at the time it made its decision, noting that the Report was obtained by EPA on December 9, 2010, prior to the issuance of the final TMDL on December 29, 2010.  (Doc. 85 at 17 of 27; *see also* Doc. 88-1, Decl. of Gary Shenk.)  In its response, EPA does not appear to dispute this point, and states:

> Contrary to Plaintiffs' unsupported allegations, EPA did not exclude the ANPC report from the record . . . because the EPA did not receive the report until after the public comment period, which closed on November 8, 2011.  [citation omitted].  Rather, EPA determined it could proceed with the TMDL and give full consideration to the ANPC report as part of its ongoing review and future updates of the TMDL.

(Doc. 88 at 19, 20 of 29.)[3]  In other words, EPA argues that the Report contained fundamental errors and therefore did not contain relevant information to be considered regarding the final Bay TMDL.  (*Id.* at 18 of 29.)  Defendant-Intervenors

---

[3]    EPA does note that it received the Report "a mere 20 days before the TMDL was signed" and that the EPA ordered that "a full analysis" of the ANPC Report be conducted by EPA "on a timeline extending beyond the establishment of the Bay TMDL – then a mere three weeks away."  (Doc. 88 at 18 of 29.)  Though the temporal proximity of the EPA's receipt of the Report and the promulgation of the TMDL is noted, it does not change the fact that the Report was "before" the EPA prior to the issuance of the final TMDL.

further argue that Plaintiffs' motion should be denied because the ANPC Report is "deeply flawed."  (Doc. 89 at 10-14.)

EPA's stance that a document that is considered but dismissed as unworthy ought to be omitted from the record represents a misinterpretation of the standard.  As stated, EPA is required to include on the administrative record any materials that it either directly or indirectly *considered* during the decision process. EPA's own exhibit demonstrates that the Report was considered by EPA and ultimately determined to be faulty and designated for further review subsequent to the issuance of the TMDL.  Attached as Exhibit 1 to EPA's response is the Declaration of Gary Shenk, Integrated Analysis Coordinator for the Chesapeake Bay Program Office (CBPO), EPA Region III.  (Doc. 88-1.)  In that Declaration, Mr. Shenk states:

> I joined the [December 9, 2010 press conference call regarding the ANPC report] approximately 30 minutes after the beginning of the conference.  I learned that the ANPC report compared the draft CBP Watershed Model with a draft USDA-CEAP report on the Chesapeake.  The press release contained information on how to obtain the report through the internet, and the CBPO obtained it by downloading the report through the internet on December 9, 2010.
>
> ***
>
> Following receipt, I read the ANPC report and observed it addressed issues that had already been analyzed by EPA CBPO in our earlier comparison of the CBP Watershed Model with USDA's CEAP model.
>
> ***
>
> Upon reading the ANPC report in December 2010, I found many of the results in the ANPC report scientifically invalid.  The ANPC report evaluated the Bay TMDL, which was made with one model (the CBP Watershed Model) - with another model (USDA-CEAP model).  This is a fundamental flaw of the ANPC report as it ignores the inherent differences that exist between any two models. . . . Based on my knowledge of the two models, the earlier EPA and USDA analysis to compare the two models, and

> my general knowledge of modeling and TMDLs, it was apparent that many of the conclusions in the December 8, 2010 ANPC report were not valid.
>
> ***
>
> Because I knew there were fundamental errors in the ANPC report, I concluded that EPA did not need to consider the ANPC report in the 2010 TMDL decision, but would, instead, undertake an analysis of, and response to, the ANPC report after the TMDL was established.  Lewis Linker and Kelly Shenk, both EPA employees working at the CBPO, also read the ANPC report after we received it on December 9 and agreed with my conclusions.
>
> ***
>
> EPA began to draft an analysis of, and response to, the ANPC report early in January 2011 and had largely completed the analysis and response by February 1, 2011.

(Doc. 88-1, ¶¶ 4-8.)  From this, it is apparent that several EPA staff members received, reviewed, and analyzed the ANPC Report prior to the issuance of the TMDL.  At least one EPA employee participated in a media conference call discussing issues and concerns raised in the ANPC Report.  These employees dismissed "many" (but apparently not all) of the conclusions in the Report, but were nevertheless sufficiently concerned to order further review, albeit subsequent to the issuance of the final TMDL.  Accordingly, it is clear that EPA, if nothing more, "considered" the Report during the drafting of the TMDL.  That the EPA ultimately dismissed many of the conclusions drawn from the Report does not change this fact.  Defendant-Intervenors' argument that the Report should not be included *because* it is, in its view, deeply flawed, also misses the point.  The question here is not the validity of the Report, but rather whether the Report was considered by EPA.  The court finds it was so considered and, accordingly, the ANPC Report will be added to the administrative record.

## B.   Modeling-Related Emails

Plaintiffs also seek to supplement the record with two emails that discuss EPA's modeling.  (Doc. 85-3 ("Perkinson email chain"); Doc. 85-4 ("March 14 Pollock email chain").)  Plaintiffs argue that those emails identify concerns with how EPA changed the watershed model between two versions, version 5.2 and 5.3.  (Doc. 85 at 20 of 27.)   Plaintiffs further argue that these documents call into question how version 5.3, which was used to develop the final TMDL, fails to account for critical agricultural nutrient management practices.  (*Id.*)   EPA and Defendant-Intervenors retort that those emails were not considered by EPA in connection with the issuance of the TMDL because their primary purpose was to discuss procedural matters that had no significance regarding EPA's decision-making process. (Doc. 88 at 20 of 29; Doc. 89 at 18 of 25.)

To understand these emails contextually, it is helpful to know that a TMDL itself is only informational in nature.  The Bay TMDL is designed such that it is implemented and executed by the states within the Chesapeake Bay Watershed, which include Virginia, Maryland, Pennsylvania, New York, Delaware, West Virginia, and the District of Columbia.  Each state in the Chesapeake Bay watershed must develop a watershed implementation plan ("WIP") – which is subject to EPA approval – that describes how they will achieve their respective allocations under the TMDL.  33 U.S.C. § 1313.  In other words, while the TMDL sets the goals, actual execution is carried out by the states.  Here, EPA initially rejected all the WIPs submitted by the states and applied its own "backstop measures."  (Doc. 85 at 8 of 27.)

Although not raised by EPA, the court is sensitive to the inclusion on the record of internal agency deliberative correspondence.  This court is concerned

that the inclusion of documents reflecting internal agency deliberations might hinder candid exchanges among agency employees regarding proposed decisions and alternatives. *See Ad Hoc*, 227 F. Supp. 2d at 143 ("To require the inclusion in an agency record of documents reflecting internal agency deliberations could . . . , because of the chilling effect on open discussion within agencies, lead to an overall decrease in the quality of decisions.") (citing *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1326 (D.C. Cir. 1984)).  There are, however, several unique circumstances present here that militate in favor of inclusion of at least some of the emails.  First, a TMDL, by its nature, demands cooperative federalism and requires significant levels of coordination and communication between EPA and the state environmental agencies in the seven Bay Jurisdictions. This TMDL, in particular, is the largest TMDL promulgated by EPA, encompassing six states and the District of Columbia.  EPA simply could not implement the TMDL without communicating with the states.  Second, the administrative record is massive, consisting of DVDs that contain 38,060 Bates-stamped documents and a file transfer protocol ("FTP") website containing an additional 100,831 electronic files.  EPA has also agreed to add 2,410 documents that were inadvertently omitted from the record.  What Plaintiffs are seeking to add to the record here is five emails and one report, totaling approximately thirty-seven pages.  In addition, a review of the administrative record lodged by EPA reveals that numerous emails have been submitted as part of the administrative record.  Many of these emails pertain directly to state WIPs.[4]  Thus, it would appear as though EPA has minimal concern regarding

---

[4]   *See, e.g.,* AR0027055, *AR0027081*, *AR0027084*, AR0027088, *AR0027105*, *AR0027109*, *AR0027111*, AR0027124, AR0027125, AR0027127, *AR0027130*, *AR0027131*, *AR0027133*,

(continued...)

disclosing emails sent from agency personnel.  In light of these considerations, disclosing certain emails may be proper if it is shown that EPA considered the information contained therein.

The Perkinson email chain relates to WIP guidelines.  The chain is commenced by Jeff Corbin, senior advisor to the EPA Regional Administrator, asking Perkinson, an Assistant Division Director in the Virginia Department of Conservation and Recreation ("VA-DCR") if the WIP guidelines have been helpful in giving VA-DCR employees a "better understanding of what needs to be in the WIPs and how EPA will judge the adequacy of the WIPs."  (Doc. 85-3.)  Perkinson's response indicates the above-mentioned concerns regarding the different modeling versions.

The court finds the Perkinson email chain should be included on the administrative record.  The email chain was commenced by a senior advisor to the EPA Regional Administrator who was requesting feedback from a VA-DCR employee regarding the WIP guidelines.  It is hard to imagine how such feedback was not, at a minimum, considered by EPA during the TMDL drafting process.  EPA's bald argument that the email had no significance to EPA's decision lacks merit and fails explain why it has no significance or why it was not considered.  The fact that EPA included other emails by the same author on the same topic (WIPs) in the administrative record strongly suggests that this email is relevant and was considered by the EPA.  Accordingly, it will be added to the record.

---

[4](...continued)
AR0027137, *AR0027139, AR0027142*, AR0027156, *AR0027159, AR0027162, AR0027165, AR0027169*, AR0027171, *AR0027173, AR0027179, AR0027181*, AR0027183, *AR0027200, AR0027202*, AR0027203, AR0027206, *AR0027210, AR0027214, AR0027216*.  This list represents only some of the emails in the administrative record.  The italicized bates labels represent emails relating to state WIPs.

Plaintiffs' motion with regard to the March 14 Pollack email chain, however, will be denied.  This email differs from the Perkinson email chain in two ways.  First, the chain was commenced by a Virginia Department of Environmental Quality ("VA-DEQ") employee, not by an EPA employee soliciting feedback.  Second, the email chain was commenced for the purpose of announcing a postponement of a stakeholder advisory group meeting.  Although there is reference to watershed modeling by the VA-DEQ employee, there is no evidence to suggest that EPA considered this email in any way in drafting the TMDL.  The burden is on Plaintiffs to show not only that the document is relevant, but also that it was considered by EPA during the TMDL drafting process.  The simple fact that an email chain pertains to the TMDL and includes an EPA employee, without more, is not sufficient to overcome the presumption that the certified record is otherwise true and correct.

C.   **Allocation Emails**

Plaintiffs also claim that EPA has excluded from the record three documents relating to the detailed pollutant allocation in the TMDL.  (Doc. 85-2 ("March 22 Pollack email chain"); Doc. 85-5 ("Corbin email"); Doc. 85-6 ("Shenk email chain").)  Plaintiffs believe that these emails reveal how EPA arrived at the pollution allocations in both the draft and final WIPs.  (Doc. 85 at 15 of 27.)  EPA argues that these documents were properly excluded from the record because they reflect discussions between EPA and a VA-DEQ employee regarding Virginia's *draft* WIP, not the final WIP.  (Doc. 88 at 17 of 29.)  EPA further argues that the Shenk email chain is "largely transmittal" and was properly left out of the record "because any arguably relevant substantive content is repeated in greater detail in the

seven-page attachment [to the email] which, itself, is part of the record." (*Id.*)  The court will review each email in turn.

The March 22 Pollack email chain, like the Perkinson email chain discussed above, was commenced by EPA Senior Advisor Jeff Corbin requesting feedback from a VA-DEQ employee regarding the WIP guidelines.  In response, Allan Pollack, of VA-DEQ discusses, *inter alia*, pollution load allocations.  For the same reasons discussed above regarding the Perkinson email chain, the March 22 Pollack chain will be included on the record.

The Corbin email (Doc. 85-5), however, will not be included on the record.  This is an email from Corbin to Anthony Moore (position unknown) indicating a timeline for submission of Virginia's WIP and also indicating that Virginia's WIP will satisfy EPA's draft allocations.  Unlike the emails above, Corbin's email is not requesting feedback regarding WIPs.  Moreover, no response is given.  This is a one-way email from EPA transmitting information.  In other words, there is no outside information offered for EPA to "consider" in regards to the TMDL.  Had Corbin requested information relevant to the TMDL and a response been received, then, for the same reasons above, the court could safely assume that the requested information was considered by EPA.  This is not the case here, and thus this is the type of transmittal, deliberative email that is properly excluded from the record.

Finally, the court finds the Shenk email chain should be included for several reasons.  First, the court is unmoved by EPA's argument that the emails were not relevant to the final TMDL because they related only to draft WIPs.  The administrative process is one of proposals, drafts, comments, revisions and final

drafts and the materials produced in this process are typically part of the administrative record. *Ohio Valley*, 2003 U.S. Dist. LEXIS at *20 (citing *Connecticut v. Daley*, 53 F. Supp. 2d 147, 159 (D. Conn. 1999)).  The court is also unmoved by EPA's argument that any relevant content is repeated in the attachment to the email, which is already part of the record.  If anything, this argument vouches for the email's relevancy.  Moreover, that the email might present cumulative information is no reason to deny completion of the record.  *See Ad Hoc*, 227 F. Supp. 2d at 139 n.4.  Thus, the court will include these emails in the administrative record.

### D.   Discovery

Plaintiffs also seek leave to conduct additional discovery to determine the completeness of the administrative record.  Plaintiffs would like to conduct limited discovery for "additional 'Agricultural Related Documentation,' including those documents that relate to the technical issues discussed in the ANPC Report, and specifically for those documents created between EPA's receipt of the ANPC Report and EPA's promulgation of the final TMDL, and/or a deposition of an EPA witness who can speak to the agency's internal discussions and decisions prior to and following receipt of the ANPC Report."  (Doc. 85 at 22 of 27.)  In support, Plaintiffs note that the number of agricultural-related documents following EPA's receipt of the ANPC Report is "sketchy and less than one would expect." (*Id.*)  They further argue that the fact that the ANPC Report was omitted from the record is evidence that other similar documents may also be missing from the record. (*Id.* at 23 of 27.)  Lastly, Plaintiffs argue that the administrative record here is inconsistent with other TMDL administrative records where correspondence, draft documents, and technical reports that reflect EPA's full review process and deliberations were included. (*Id.*)

Notwithstanding the court's finding that several documents should be added to the record, Plaintiffs have failed to make a showing that additional discovery is warranted.  "There is a strong presumption against discovery into administrative proceedings born out of the objective to preserve the integrity and independence of the administrative process." *NVE, Inc. v. Dept. of Health and Human Servs.*, 436 F.3d 182, 195 (3d Cir. 2006); *see also Am. Bankers Assoc. v. Nat'l Credit Union Admin.*, 513 F. Supp. 2d 190, 200 (M.D. Pa. 2007).  Historically, the Third Circuit permitted discovery only in cases involving alleged bias on the part of the agency.  *NVE, supra,* (citing *Grant v. Shalala*, 989 F.2d 1332, 1334 (3d Cir. 1993) and *Hummel v. Heckler*, 736 F.2d 91 (3d Cir. 1984)).  In *NVE*, the Third Circuit enunciated another exception to the strong presumption against discovery: a materially deficient administrative record.  *Id.* at 195; *Am. Bankers Assoc.*, 513 F. Supp. 2d at 201 ("[T]he court [in *NVE*] identified two situations where discovery might be permitted: (1) where plaintiff alleges that bias corrupted the agency's decision; and (2) where factors indicate that the administrative record submitted to the district court is incomplete.").  Thus, to overcome the strong presumption against discovery, Plaintiffs must make a strong showing of bias or incompleteness.

Here, Plaintiffs do not argue for discovery on the basis of bias, but rather argue that "discovery is warranted because of EPA's incomplete record and the known existence of documents at the agency relevant to the decision under review . . . ." (Doc. 85 at 21 of 27.)  Although not specifically enumerated in *NVE*, the court in *American Bankers Assoc.*, *supra*, interpreted *NVE* to set forth three factors to consider before permitting discovery where a plaintiff alleges that the administrative record is incomplete: (1) the clarity of agency procedures that define

the scope of an administrative record; (2) an indication that important documents were missing from the record; and (3) the size of the record.  Application of these factors militates against discovery.

None of the parties identify any agency rules or EPA policy document defining the proper contents of the administrative record or the process by which a record is compiled.  Such rules or documents, if existing, can aid a reviewing court in determining whether a plaintiff can make a threshold showing that the agency's rules were not followed, which would undermine the presumption against discovery.  *Am. Bankers Assoc.*, 513 F. Supp. 2d at 202.  Where no such rules exist,[5] it is harder for a reviewing court to discern whether the record presented is the "whole" record.  *Id.* Here, Plaintiffs only address this issue indirectly, arguing that the administrative record here is inconsistent with the administrative records in two other TMDL cases. However, some inconsistencies in the composition of the administrative record are inevitable and do not amount to a strong showing required to permit discovery. Absent any additional evidence that the agency failed to follow its own procedures for compiling the record, the court will not permit discovery on this basis.  *See NVE*, 436 F.3d at 195.

Second, notwithstanding the court's finding that additional documents should be added to the record, the court is not convinced that these documents were so fundamental to EPA's decision-making process so as to warrant discovery.  Nor is the court convinced that the absence of "agricultural-related emails" subsequent to the issuance of the ANPC Report indicate that critical documents are missing from

---

[5]   Agencies are not required to establish such rules under the APA, and the court is not free to impose such procedural requirements.  *Am. Bankers Assoc.*, 513 F. Supp. 2d at 202, n.10 (citing *Pension Benefit Guar. Corp. v. LTV Corp.,* 496 U.S. 633 (1990)).

the record.  In *Dopico v. Goldschmidt*, 687 F.2d 644 (2d Cir. 1982), the Second Circuit remanded to the district court to permit discovery finding that "the factual issue of what constituted the agency's 'informational base' was in dispute, and that summary judgment could not be granted 'without at least permitting plaintiffs some limited discovery to explore whether some portions of the full record were not supplied to the Court.'"  *Am. Bankers Assoc.*, 513 F. Supp. 2d at 203 (quoting *Dopico*, 687 F.2d at 654).  The court indicated that there was a strong showing that the record was not complete because "conspicuously absent were the very [documents] themselves for the relevant years.  It is almost inconceivable that such fundamental documents – the very basis for federal decision-making about mass transit grants – would not have been part of the administrative record."  *Dopico*, 687 F.2d at 654.  Here, although Plaintiffs have successfully argued that some of the emails and the ANPC Report were considered by EPA, the court does not find those documents are "fundamental documents" that formed the basis for the issuance of the TMDL.  This is especially true where, as here, the administrative record consists of tens of thousands of documents.  In other words, although the court agrees with Plaintiffs that some additional documents should be added to the record, the importance of those documents is not clear.  Absent a showing that "critical" or "fundamental" documents were omitted, the presumption against discovery remains.

Plaintiffs' additional argument that it is suspicious that there are numerous agricultural-related emails prior to the issuance of the ANPC Report, but very few after the issuance of the Report likewise does not pass muster.  Plaintiffs' argument amounts to "nothing more than speculation that the [agency] may not have produced the full record."  *NVE*, 436 F.3d at 195.  The Third Circuit has found that

requests for discovery based on such speculation fail to overcome the strong presumption against discovery. *Id.* Accordingly, discovery is not warranted on this basis.

Lastly, the size of the record, while not dispositive of the question of whether discovery is appropriate, is nevertheless a factor that the court should consider in deciding whether to take the "the unusual step of permitting invasive discovery into administrative decision-making." *Id.* at 196. In *Exxon Corp. v. Dept. of Energy*, 91 F.R.D. 26 (N.D. Tex. 1981), the court found that a 126-page record was "incomplete on its face," finding that "'it strains the imagination' to assume that this record contains all the information considered by the agency." *Id.* at 34 (quoting *Tenneco Oil Co. v. Dept. of Energy*, 475 F. Supp. 299, 317 (D. Del. 1979)). In *NVE*, the Third Circuit distinguished *Exxon*, finding that the "breadth of the [133,000-page] record submitted" did not suggest that the record was incomplete on its face and thus found discovery was not warranted. 436 F.3d at 196. Here, the court is not faced with a truncated record. Indeed, like *NVE*, the administrative record is massive. That the parties dispute the validity of several documents is, given the size of the record, neither surprising nor necessarily indicative of any wrongdoing. In short, the court finds that Plaintiffs have failed to overcome the strong presumption against discovery.

III.        **Conclusion**

In sum, the court finds that completion of the administrative record is appropriate only for those documents that Plaintiffs have clearly shown were directly or indirectly considered by EPA in conjunction with drafting and promulgating the

21

Bay TMDL.  However, Plaintiffs' discovery request will be denied because Plaintiffs have not overcome the presumption against discovery into administrative proceedings.

      An appropriate order will follow.


                                                   s/Sylvia H. Rambo
                                                   SYLVIA H. RAMBO
                                                   United States District Judge

Dated:  December 28, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**AMERICAN FARM BUREAU**      :
**FEDERATION,** *et al.,*      :     **CIVIL NO. 1:11-CV-0067**
       :
         **Plaintiffs**      :
       :
       :
         **v.**      :
       :
       :
**UNITED STATES**      :
**ENVIRONMENTAL PROTECTION**      :     **Judge Sylvia H. Rambo**
**AGENCY,** *et al.,*      :
       :
         **Defendants**      :

## O R D E R

In accordance with the above memorandum, it is **HEREBY**

**ORDERED** that Plaintiffs' motion to complete the administrative record (Doc. 82)

is **GRANTED in part** and **DENIED in part**:

     1) The motion is **GRANTED** as to Plaintiffs' exhibits 2, 3, 6 and 7.

(Docs. 85-2, 85-3, 85-6, and 85-7.)

     2) The motion is **DENIED** as to Plaintiffs' exhibits 4 and 5.  (Docs. 85-4, 85-5.)

     3) Plaintiffs' request for discovery is **DENIED**.

     It is **FURTHER ORDERED** that the parties shall provide the court

with proposed amended case management deadlines within fourteen (14) days of the

issuance of this order.

                 _s/Sylvia H. Rambo_____
                 SYLVIA H. RAMBO
                 United States District Judge

Dated:  December 28, 2011.